# M&T Bank – CAM Support Department

## Original Document Inventory and Tracking

**Loan Number:** ████████████████

**Received by:** __GI__     **Date:** __06/25/2019__

| | Original Document Received(Y/N/Copy)? | Shipped(Date/Initials) | Returned(Date/Initials) |
|---|---|---|---|
| Note | Y | | |
| Mortgage | | | |
| Title Policy | | | |
| Assignment | | | |
| MIC/LGC | | | |
| Pre-Payment Penalty Rider | | | |
| Loan Mod. Agreement | | | |

Additional Notes:

_____

_____

_____

_____

_____

## M&T Home Equity Account Agreement and Disclosure Statement
### Manufacturers and Traders Trust Company

**M&T Bank**

Date : May 08, 2006
Draw Period Expiration Date : May 08, 2016

Borrower 1's Name    Kenneth P. Ray
Borrower 1's Address    11734 Ridge Rd, Greencastle, PA 172259115

Borrower 2's Name    Tracy S. Ray
Borrower 2's Address    11734 Ridge Rd, Greencastle, PA 172259115

**Address of Mortgaged Property:** 11734 Ridge Rd, Greencastle, Franklin, PA 172259115
**Credit Limit** $40,000.00
**Payment option:** ~~Interest Only Period~~ *Principle + Interest* T.R.S.R.

### BASE ACCOUNT:
Initial Corresponding **ANNUAL PERCENTAGE RATE 7.50** %
Initial Daily Periodic Rate .0205479 %
Margin -0.25%
Maximum Corresponding **ANNUAL PERCENTAGE RATE 15.90** %
**Loan:**
**For Loans Having Terms of 12 to 36 Months**
Initial Corresponding **ANNUAL PERCENTAGE RATE 10.75**%
Initial Daily Periodic Rate .0294520%
Margin **3.00**%

**For Loans Having Terms of 37 to 72 Months**
Initial Corresponding **ANNUAL PERCENTAGE RATE 11.25**%
Initial Daily Periodic Rate .0308219%
Margin **3.50**%

**For Loans Having Terms of 73 to 180 Months**
Initial Corresponding **ANNUAL PERCENTAGE RATE 11.75**%
Initial Daily Periodic Rate .0321917%
Margin **4.00**%

### OTHER FINANCE CHARGES

| | |
|---|---|
| Application Fee | $0.00 |
| Origination Fee | $0.00 |
| Processing Fee | $0.00 |
| Lock-in Fee | $50.00 |

### ORIGINATION EXPENSES

| | |
|---|---|
| Appraisal Fee | $0.00 |
| Survey Fee | $0.00 |
| E & O/Title Report Fee | $0.00 |
| Title Insurance Premium | $0.00 |
| Mortgage Recording Fee | $0.00 |
| Closing Fee | $0.00 |
| Mortgage Tax: | |
|     Total Customer Tax | $0.00 |
|     Paid at Closing | $0.00 |
| Recordation Tax | $0.00 |
| Flood Determination Fee | $0.00 |

### OTHER FEES

| | |
|---|---|
| Stop Payment Charge | $0.00 |
| Late Charge | 2% of "Amount Billed" |
| Returned Loan Check Charge | $0.00 |
| Returned Payment Charge | $20.00 |
| Discharge Fee | $36.60 |
| Reconveyance Fee | $0.00 |
| Annual Fee | $0.00 |

---

**1. Definitions.** In this Agreement the following definitions apply:
"Agreement" means this M&T Home Equity Account Agreement and Disclosure Statement, the Mortgage and any amendment or addendum to this Agreement.
**Parties to the Agreement.**
"We," "us," "our" or "Lender" means the Lender named above or any person or entity to whom the rights of the Lender have been assigned.
"You," "your," "yours" or "Borrower" means each and every person signing this Agreement as a Borrower, whether one or more persons sign.
"Owner" means a person who is owner or part owner of the Mortgaged Property, who is signing this Agreement and the Mortgage but whose liability is limited to the Owner's interest in the Mortgaged Property. The Owner does not have the right to obtain loans on the Account.

**Parts of the Account.**
"Account" means the M&T Home Equity Account evidenced by this Agreement.
"Base Account" means the part of the Account from which loans will be made, unless the loan is made at a time when a special Tier interest rate is in effect. The interest rate applicable to the Base Account may change.
"Loan" means the part of the Account to which you have elected to transfer all or a portion of the outstanding balance. The interest rate applicable to a Loan will not change, once the Loan has been established.
"Tier" means the part of the Account from which loans will be made when a special promotional rate is in effect, if, from time to time, we offer such promotions. The interest rate applicable to a Tier may or may not change, depending on the terms of the particular promotion.

## Other Terms Used in this Agreement.

"Billing Cycle" means the interval between the dates on which monthly billing statements are prepared or would be prepared if a nonactivity statement were required. The Billing Cycle may also be referred to as the "Statement Period" or "Billing Period" on your monthly billing statement.

"Credit Limit" means the total dollar amount of credit that we have approved for your Account. The total of the Outstanding Loan Balances in the Base Account, all Tiers and all Loans may not exceed the Credit Limit.

"Draw Period" means the first phase of the Account during which you can obtain loans and make transfers to Loans. During the Draw Period begins after we have acknowledged the Mortgage, you have signed and approve the credit, you have signed this Agreement, you have delivered all the required documents to us, you have paid any required Origination Fee, Processing Fee and Mortgage Recording Tax, and no one has rescinded this Agreement within the time provided under the Notice of Right to Cancel.

"Mortgage" means the M ortgage or d ec d o f T rust g iven b y the Borrower and/or to the Owner to secure this Account.

"Mortgaged Property" means the property covered by the Mortgage given to secure this Account, as it is more particularly described in the Mortgage.

"Outstanding Loan Balance" or "Loan Balance" means the unpaid principal balance of loans on the Account.

"Outstanding Total Balance" or "Total Balance" means the unpaid balance of loans, Finance Charge, Other Charges and any other amounts owed on this Account. The Outstanding Total Balance may also be referred to as the "New Balance" on your monthly billing statement.

"Repayment Period" means the phase of the Account after the Draw Period has ended, during which any unpaid balance must be paid. You may not obtain new loans or make transfers to a Loan during the Repayment Period.

"Suspension" means that you will not, during the period of Suspension, be able to obtain new loans or any extension of credit on the Account. Suspension affects the Account temporarily, and credit privileges may be restored when the reason for the Suspension no longer exists.

"Termination" means that you will no longer be able to obtain loans or any extension of credit on this Account. Termination affects the Account permanently.

2. **General Description of the Account.** Your Account is a revolving loan account, sometimes called a line of credit. It is secured by a Mortgage. You may obtain loans (also referred to as advances) from time to time during the Draw Period, up to the Credit Limit, by writing checks in amounts of not less than $100.00, or by using other methods which we may permit. We will add the loans to the balance of the Base Account; you will repay the loans by monthly payments. As you repay the loans, we will again make the credit available to you during the Draw Period, up to the Credit Limit. At the end of the Draw Period, you will repay the Total Balance during the Repayment Period. We will charge a Finance Charge on the Outstanding Loan Balance during the Draw and Repayment Periods. The rate of Finance Charge on a loan may change from time to time. Each new rate Charge on the Base Account may change from time to time. Each new rate will apply to the outstanding balance on the Base Account and to all new loans, until the rate changes again. During the Draw Period, you may transfer all or a portion of the balance (the minimum transfer amount permitted is $5000.00) in a Loan. Once the rate of Finance Charge is established for a Loan, that rate will not change during the term of the Loan. You will determine how long you want to take to repay the balance transferred to a Loan. If more than one Borrower is identified in the beginning of this Agreement, each has the authority to write checks or obtain loans, without the signature, endorsement or permission of any other Borrower.

3. **Draw and Repayment Periods.** The Account will consist of two periods, a Draw Period and a Repayment Period. You are permitted to make new loans from time to time, only during the Draw Period. The Draw Period will end at the close of the Billing Cycle that the Account is in on the Draw Period Expiration Date on page one. The Repayment Period, which begins with the first Billing Cycle following the end of the Draw Period, will continue until you have paid the Total Balance in full. The Repayment Period will be approximately 15 years long. Depending on the balance in the Account at the end of the Draw Period and on the Annual Percentage Rate(s) which apply, your required payments may repay the balance in less than 15 years.

4. **Our Agreement to Make Loans.** We agree to pay amounts written on this Account, so long as you do not cause the Loan Balance to exceed the Credit Limit, which are dated, drawn and issued on this Account by you during the Draw Period and received by us during the Draw Period, except as provided in the following sentence. We will not pay any check dated, drawn or issued by you on or received by us after this Account is Terminated or Suspended during any period when your right to further extensions of credit is Suspended as provided in this Agreement. You agree that any checks issued on this Account will be only those checks issued by us for that special purpose.

5. **Postdated and State Dated Checks.** Procedures and laws applicable to postdated and stale dated checks in connection with transactions on regular checking accounts of Manufacturers and Traders Trust Company shall apply to checks under this Agreement. You agree not to issue postdated checks.

6. **Our Liability.** We have no responsibility for failure of any machine, merchant or other party to honor checks or any other means which we may permit from time to time to be used to obtain a loan from this Account.

7. **Security Interest.**

(a) You and any other Owners of the Mortgaged Property give us a Mortgage on the Mortgaged Property to secure the payment of all money due under this Agreement, including future advances. The rights and duties of you and any other Owners and of us are set forth in this Agreement and in the Mortgage.

(b) You also give us a security interest in:

(i) All of your money on deposit with us. This includes money now on deposit or which may be deposited in the future with us by you, including deposits with any co-depositor, including your spouse. If there is a default under this Agreement we may set-off amounts owed under this Agreement against such deposits.

(ii) The proceeds and returned premiums of any credit life insurance which you may obtain or of property insurance covering the Mortgaged Property and, if applicable, flood insurance.

(iii) Collateral securing other obligations to us may also secure this Account.

(c) We waive our security in the Mortgaged Property as to any loan to the extent that it would cause the Loan Balance to exceed the Credit Limit.

(d) We waive any security interest, to the extent that it secures this Agreement, that we have or get in the future in anyone's principal residence, except for the Mortgaged Property.

8. **Finance Charge.** At all times that this Account is in effect, including the Draw Period and the Repayment Period and any period after Termination in which there remains an Outstanding Loan Balance in this Account, the Finance Charge will be calculated in the following way:

(a) **When the Finance Charge Begins.** The Finance Charge begins to accrue on the day each loan is posted to this Account. There is no time during which credit is extended that you do not incur a Finance Charge.

(b) **How We Determine the Balance on Which the Finance Charge is Computed.** For each part of your Account, we compute the Finance Charge on the Daily Balance (including current transactions) on each part. To get the Daily Balance, each day we take our beginning Total Balance on each part and add any new loans or transfers posted to that part that day; and subtract any payments, credits, Other Charges, credit insurance premiums and unpaid Finance Charge.

(c) **How We Compute the Finance Charge.** For each part of your Account, we compute the Finance Charge due to the Periodic Rate by multiplying the Daily Balance by the Daily Periodic Rate applicable to that part; this gives us the Finance Charge for each day. We then add together the Finance Charge for all the days of the Billing Cycle. This gives us the Finance Charge for each part of the Account. We then add together the Finance Charge for each part of the Account.

Finance Charges for all the parts to get the Finance Charge due to the Periodic Rate for the Account.

**(d) Daily Periodic Rate and Annual Percentage Rate.** The Finance Charge due to the Periodic Rate for each part will be computed using the initial Daily Periodic Rate for that part, disclosed on page one. These rates correspond to the initial Corresponding **ANNUAL PERCENTAGE RATES** also disclosed on page one. The rates for the Base Account are subject to change each Billing Cycle as described in the "Variable Rate" section below. Loan rates offered during a Billing Cycle are subject to change each Billing Cycle, as described in the "Variable Rate" section below; however, once the rate for a Loan is established, the rate for that Loan will not change.

**(e) The Corresponding Annual Percentage Rate** includes only interest and no other charges or other Finance Charges.

**(f) Variable Rate on the Base Account.** The Daily Periodic Rate and Corresponding Annual Percentage Rate applicable to the Base Account may increase or decrease as of the first day of each Billing Cycle. An increase in the rate will increase the amount of Finance Charge you must pay and can change the amount of and the number of payments necessary to pay the balance in full.

(i) **Index.** The "Index" will be the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal* on the last day that *The Wall Street Journal* is published in the month preceding the calendar month in which the Billing Cycle begins.

(ii) **Margin.** The "Margin" will be equal to the Base Account Margin disclosed on page one.

(iii) **Calculation of the Corresponding Annual Percentage Rate.** The Corresponding Annual Percentage Rate for any Billing Cycle will be the sum of the Index plus the Margin, rounded to the nearest one-hundredth of one percent (.01%). Provided, however, that the Corresponding Annual Percentage Rate will never be more than the Maximum Corresponding Annual Percentage Rate disclosed on page one.

(iv) **Calculation of the Daily Periodic Rate.** The Daily Periodic Rate to be used in each Billing Cycle will be determined on the first day of the Billing Cycle by dividing the applicable Corresponding Annual Percentage Rate by 365 (or 366 in a leap year). The resulting percentage will be truncated to seven decimal places without rounding (.0000001%).

**(g) Variable Rate on the Loan.** The Daily Periodic Rate and Corresponding Annual Percentage Rate which would be applicable to any Loan established in a Billing Cycle may increase or decrease as of the first day of each Billing Cycle, and any Loan established in that Billing Cycle will be subject to that rate for the duration of that Loan. Increases in the rate will increase the amount of Finance Charge that you would pay over the term you elect for a Loan, and will also increase the amount of the payments over the term of the Loan.

(i) **Index.** The "Index" will be the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal* on the last day that *The Wall Street Journal* is published in the month preceding the calendar month in which the Billing Cycle begins.

(ii) **Margin.** The "Margin" will be equal to the Loan Margin disclosed on page one.

(iii) **Calculation of the Corresponding Annual Percentage Rate.** The Corresponding Annual Percentage Rate for a new Loan established during any Billing Cycle will be the sum of the Index plus the Margin, rounded to the nearest one-hundredth of one percent (.01%). Provided, however, that the Corresponding Annual Percentage Rate will never be more than the Maximum Corresponding Annual Percentage Rate disclosed on page one.

(iv) **Calculation of the Daily Periodic Rate.** The Daily Periodic Rate to be used for the term of a new Loan established during a Billing Cycle will be determined on the first day of the Billing Cycle by dividing the Corresponding Annual Percentage Rate by 365 (or 366 in a

leap year). The resulting percentage will be truncated to seven decimal places without rounding (.0000001%).

**(h) Variable Rate on a Tier.** If a special promotional rate is offered in the future, the Daily Periodic Rate, Corresponding Annual Percentage Rate, and any rules as to how they may change, will be disclosed to you at the time of the offer. The rates applicable to a Tier will never be higher than the applicable rate on the Base Account during the Billing Cycle in which the Tier is offered.

**9. Other Finance Charges.**

**(a) Application Fee.** You agree to pay, or will have paid before signing this Agreement, the Application Fee, if shown on page one, before your application is approved.

**(b) Origination Fee and Processing Fee.** You agree to pay the Origination Fee and Processing Fee, if shown on page one, before the Draw Period begins. A loan or loans from the Account may not be used to pay the Origination Fee or Processing Fee.

**(c) Lock-in Fee.** Except for the first transfer, you agree to pay a Lock-in Fee each time you transfer an amount from the Base Account or a Tier to a Loan. The amount of the Lock-in Fee is disclosed on page one.

**10. Other Charges.**

**(a) Origination Expenses.** If shown on page one, you agree to pay the Origination Expenses to us or to third parties, in the amounts specified.

**(b) Late Charge.** You agree to pay a Late Charge for each month in which you fail to make the Total Payment Due within 15 days after its Due Date. The Late Charge will be 2% of the Amount Billed this Statement. No Late Charge will be due if the reason the payment is late is either:

(i) attributable to a Late Charge assessed on an earlier payment; or

(ii) because, after default by you, the entire balance on this Account is due.

**(c) Annual Fee.** If shown on page one, you agree to pay an Annual Fee, in the amount specified. The Annual Fee will be charged to your Account during the first Billing Cycle and on the first day of each Billing Cycle immediately following each anniversary of the Account, during the Draw Period, unless otherwise stated on page one.

**(d) Stop Payment Charge.** If shown on page one, you agree to pay a Stop Payment Charge, in the amount specified, if you request us to stop payment on a special check written on this Account.

**(e) Returned Loan Check Charge.** If shown on page one, you agree to pay a Returned Loan Check Charge, in the amount specified, for each special check written on this Account which is properly dishonored by us for any reason, or which is paid by us but, after the special check is posted to your Account, the Outstanding Loan Balance exceeds the Credit Limit.

**(f) Returned Payment Charge.** If shown on page one, you agree to pay a Returned Payment Charge, in the amount specified, if your payment on the Account is made with a check that is returned unpaid by the drawee for any reason.

**(g) Discharge Fee.** If shown on page one, you agree to pay a Mortgage Discharge Fee, in an amount no more than that specified, in order to record a discharge/satisfaction of the mortgage once all amounts secured by the mortgage have been paid. If the actual amount charged by the County Clerk/County Recorder to record the discharge/satisfaction of the mortgage is less than the amount specified, you will pay the lesser amount.

**11. Transfers Between Parts of the Account.** During the Draw Period, you may transfer all or a portion of the Outstanding Loan Balance in the Base Account or in a Tier to a Loan.

**(a) Request for Transfer.** You may request a transfer by telephone, by calling the number we will provide to you for that purpose, in person at any of our branch offices, during hours that we are open for normal banking business, or by other methods that we permit from time to time. Upon receiving the request for a transfer, we will comply with the request or

respond to you within a reasonable time, which may not be that same banking day.

**(b) Lock-in Fee.** Except the first transfer, you agree to pay a Lock-in Fee for each transfer from the Base Account or a Tier to a Loan. The amount of the fee is disclosed on page one.

**(c) Term of a Loan.** When you request a transfer from the Base Account or a Tier to a Loan, you must specify the length of the term of the Loan. The term must be stated in even months, not less than twelve (12) months and not more than one hundred eighty (180) months. If you fail to specify a term, the term of the Loan will be 180 months.

**(d) Limitations on Transfers.**

(i) Transfers from the Base Account or a Tier to a Loan must be in amounts not less than $5,000.00.

(ii) You may not transfer balances from a Loan to the Base Account in amounts not less than $5,000.00.

(iii) Only Loan Balances may be transferred.

(iv) Transfers may only occur during the Draw Period.

(v) Transfers will not be permitted during a time when your right to make new loans has been Suspended or Terminated.

(vi) Upon transfer of a balance, Finance Charge at the rates applicable to the part of the Account to which the balance has been transferred will become effective.

(vii) Your Account may contain a maximum of three (3) Loans at any time, except that if the Account contains a Tier, it may contain a maximum of two (2) Loans until the Tier has been paid or transferred. If your Account contains three (3) Loans, you will not be permitted to establish a new Loan or Tier until one of the established Loans is paid in full, including all principal balance, Finance Charges, and other fees and charges.

**12. Definitions of Terms Related to the Minimum Payment.**

(a) "Due Date" means the date on which the payment is due each month. The Current Due Date will be shown on the billing statement each month that a payment is due.

(b) "Amount Billed this Statement" means the current portion of the payment which becomes due for the month reflected on a billing statement.

(c) "Over Credit Limit Amount" means the amount by which the Outstanding Loan Balance on the Account exceeds the Credit Limit.

(d) "Past Due Amount" means unpaid payments which are due from previous billing statements.

(e) "Total Payment Due" means the minimum payment for the Account which you agree to pay on or before the Current Due Date.

**13. Your Promise to Make the Minimum Payment.** You promise to pay to us the Total Payment for each month on or before the Current Due Date shown o n t he c urrent b illing s tatement. I f you a uthorize us to ha ve t he payment automatically charged to an asset account, this will occur on or about the due Date each month. The Total Payment Due will never be greater than the Outstanding Loan Balance, Finance Charges due to the application of the Periodic Rate, charges for group credit insurance, Other Finance Charges and Other Charges on the Account.

**14. Calculation of the Minimum Payment.** For each Billing Cycle, the Total Payment Due will be the total of any Past Due Amount, any Over Credit Limit Amount, and the Amount Billed this Statement.

**(a) The Amount Billed this Statement.** The Amount Billed this Statement will be the greater of (i) the sum of the Minimum Monthly Payments due for the Base Account, any Tier, and each Loan in the Account; or (ii) $100.00.

**(b) Minimum Monthly Payment for the Base Account and for a Tier.**

(i) During the Draw Period.

(A) **Principal and Interest Payment Option.** If you have chosen the Principal and Interest Payment Option on page one, the Minimum Monthly Payment for the Base Account and, if applicable, for a Tier will be the sum of the Finance Charges due to the application of the Periodic Rate, charges for group credit insurance, Other Finance Charges and Other Charges accruing during the Billing Cycle for that part, plus the lesser of (1) the Loan Balance in that part at the end of the Billing Cycle; or (2) the Loan Balance in that part at the end of the last day on which a loan was posted to that part divided by 180.

(B) **Interest Only Payment Option.** If you have chosen the Interest Only Payment Option on page one, the Minimum Monthly Payment for the Base Account and, if applicable, for a Tier will be:

(1) **During the first five years of the Draw Period.** During Billing Cycles the last day of which are before a date five (5) years prior to the Draw Period Expiration Date, the sum of the Finance Charges due to the application of the Periodic Rate, charges for group credit insurance, Other Finance Charges, and Other Charges accrued during the Billing Cycle for that part.

(2) **During the last five years of the Draw Period.** During Billing Cycles the last day of which are on or after a date five (5) years prior to the Draw Period Expiration Date, the sum of the Finance Charges due to the application of the Periodic Rate, charges for group credit insurance, Other Finance Charges, and Other Charges accrued during the Billing Cycle for that part, plus the lesser of (1) the Loan Balance in that part at the end of the Billing Cycle; or (2) the Loan Balance in that part at the end of the last day on which a Loan Balance was posted to that part divided by 180.

(ii) **During the Repayment Period.** The Minimum Monthly Payment during the Repayment Period for the Base Account and, if applicable, the Tier will be the sum of the Finance Charges due to the application of the Periodic Rate, charges for group credit insurance, Other Finance Charges, and Other Charges accrued during the Billing Cycle for that part, plus the lesser of (1) the Loan Balance in that part at the end of the Billing Cycle; or (2) the Loan Balance in that part at the end of the last day on which a loan was posted to that part divided by 180.

**(c) Minimum Monthly Payment for the Loans.** The Minimum Monthly Payment for each Loan during the Draw Period and the Repayment Period will be a fixed, amortizing payment amount determined at the time the Loan is established, and which assumes that all payments are made on their due Date. The Minimum Monthly Payment will consist of both a portion of the principal balance and accrued Finance Charge. When all payments are made on time, depending on the amount borrowed and the term selected for a Loan, you may slightly overpay (or underpay) outstanding principal over the term of the Loan. We will always adjust your last payment so that you do not overpay (or underpay) a Loan when you make to your payments on a daily basis. Since Finance Charge accrues on a daily basis, early payments will result in l ess f inance Charge accruing o ver the term of a Loan, and late payments will result in additional Finance Charge accruing on the Loan (plus, if applicable, Late Charges). In these cases, we may (i) adjust your final payment amount due; (ii) shorten the term by which you make your monthly payments on a Loan (for early payments); or (iii) extend the term of your Loan until it is fully repaid (for late payments).

**15. Prepayment.** If you pay an amount greater than the Total Payment Due in any month, this will not affect your obligation to make a payment the next month. YOU MAY MAKE PAYMENTS IN ANY AMOUNT IN EXCESS OF THE TOTAL PAYMENT DUE AND MAY PAY THE ENTIRE BALANCE OR ANY PART OF IT AT ANY TIME PROVIDED THAT YOU PAY AT LEAST THE TOTAL PAYMENT DUE IN ANY MONTH WHEN IT IS DUE.

**(e) After Termination.** If this Account is Terminated during the Draw Period in accordance with the "Termination of Account Upon Default" section, for the purposes of calculating the Payment, the billing cycle in which the Termination occurs shall be considered to be a cycle during the Draw Period and all subsequent cycles shall be considered to be cycles during the Repayment Period. If this Account is Terminated during the Repayment Period, the cycle in which the Termination occurs and all subsequent cycles shall be considered to be cycles during the Repayment Period. After Termination, the payments shall be calculated in accordance with this paragraph unless we exercise our rights under the "Acceleration of the Outstanding Balance" section.

**15. Crediting of Payments.** Any payment we receive for application to amounts owing under the Account need not be posted to the Account or considered to have been made until the fifth day after we receive it unless it is (1) made in United States funds, in cash delivered in person or by a check or money order payable to our order; (2) accompanied by a payment stub for the Account; and (3) received by us at our address indicated on the payment stub by 1:00 p.m. on any day Monday through Friday that is not a legal holiday.

**16. Application of Payments.** Even if you specify otherwise, we will apply any payment we receive for your Account to the items then posted to your Account in the following order:

(a) first, billed Finance Charges on a Tier; then billed Finance Charges on the Base Account; then billed Finance Charges on the Loans, starting with the lowest interest rate and working towards the highest;

(b) billed charges for credit insurance;

(c) billed Return Payment Charges, billed Return Loan Check Charges, billed Stop Payment Charges and billed Annual Fees;

(d) billed principal reduction for the Tier; billed principal reduction for the Base Account; billed principal reduction for the Loans, starting with the lowest interest rate and working towards the highest;

(e) billed late charges;

(f) first, the remaining principal balance on the Tier; then the remaining principal balance on the Base Account; then the principal balance remaining on the Loans, starting with the lowest interest rate and working towards the highest;

(g) any other amounts due.

Notwithstanding the above, you may, on forms provided by us, elect to fully pay off any Loan prior to its scheduled term. If you pay off a Loan in any Billing Cycle, you are still required to pay the Total Payment Due for the Account for that Billing Cycle or the then Outstanding Total Balance, whichever is less.

**17. Property Insurance.**

(a) We require you to obtain and keep in force property insurance on the Mortgaged Property and to provide evidence of insurance to us. The insurance must cover loss of or damage to the Mortgaged Property and must be in such an amount as is sufficient to protect our interest, as well as the interests of anyone who holds a mortgage or security interest in the Mortgaged Property with a priority superior to ours. If flood insurance is required by federal law, you agree to obtain and keep in force insurance in the amount required by law. YOU MAY OBTAIN THESE INSURANCE COVERAGES FROM ANY PERSON OF YOUR CHOICE. Your choice is subject to our reasonable approval. All policies must name us as a loss payee/mortgagee in a form acceptable to us and provide for at least 10 days notice to us of reduction in coverage or cancellation.

(b) If you fail to keep in force property insurance and/or, if applicable, flood insurance and/or fail to provide evidence of such insurance to us, we may notify you that you should purchase the required insurance at your expense. If you fail to purchase the insurance within the time stated in the notice and/or fail to provide us with evidence of such insurance, we may purchase insurance to protect our interest, to the extent permitted by applicable law and charge you the cost of the premiums and any other amounts we incur in purchasing the insurance. THE INSURANCE WE PURCHASE WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF. At our option, we may treat these premiums and fees as a loan from this Account on which interest will accrue or as amounts incurred to protect the security of the Mortgage. We are not required to purchase this insurance, however.

**18. Credit Insurance.** Credit life insurance, if available, is not required to obtain credit.

**19. You Agree.**

(a) Not to write checks for less than $100.00.

(b) To repay all amounts advanced hereunder together with a Finance Charge, as provided in this Agreement. You also agree to pay any other amounts which become due hereunder. These include, as applicable, other Finance Charges, Other Charges, any amounts advanced to protect the security of the Mortgage or for insurance, and Costs of Collection.

(c) To pay at least the Total Payment Due each month on or before the Due Date.

(d) Not to make loans from this Account which will cause the Outstanding Loan Balance in this Account at any time to exceed the Credit Limit which we have now approved or may approve at any time in the future.

(e) To immediately pay the amount of any Loan Balance in excess of the Credit Limit.

(f) To give us such personal financial statements as we may request from time to time.

(g) Not to give us false information or signatures at any time or let anyone who is not a Borrower use the Account.

(h) To perform all obligations under any mortgage or security agreement which has priority over the Mortgage and to pay all taxes, charges or assessments which might have priority over the Mortgage.

(i) That you own the Mortgaged Property and that it is unencumbered except for encumbrances now of record.

(j) That you will notify us immediately in writing if you change your residence or mailing address.

(k) That if the Mortgaged Property is part of a condominium or a planned unit development, to comply with all by-laws, regulations or restrictions of record.

(l) To keep the Mortgaged Property insured as provided in this Agreement.

(m) Not to transfer title to the Mortgaged Property (except as provided by federal law).

(n) To keep the Mortgaged Property in good order and repair.

(o) To permit our agents to inspect the Mortgaged Property from time to time, after reasonable notice.

(p) Not to use credit available to you on your Account during any period during which a Tier is in effect to pay off or reduce any balances that you have in the Base Account.

**ALL OF THE ABOVE PROMISES ARE MATERIAL OBLIGATIONS UNDER THIS AGREEMENT.**

**20. Possible Actions Which May Be Taken By Lender.** Under the circumstances described below, Lender can: (1) terminate the Account; (2) require you to pay the entire outstanding balance on the Account in one payment; (3) refuse to make additional extensions of credit; (4) reduce the Credit Limit; and/or (5) make specific changes that are set forth in this Agreement.

(a) **Termination of Account Upon Default.** You will be in default and this Account will Terminate, effective immediately, upon our mailing a Notice of Termination to you if:

(i) You commit fraud or make a material misrepresentation in connection with this Account.

(ii) If you fail to meet any of the repayment terms of this Agreement for a period of 30 days.

(ii) Any of your actions or your failure to act adversely affects our security for this Account, or any of our rights in any security; for example, on the loss by way of limitation, if you transfer title to the Mortgaged Property; the sole owner of the Mortgaged Property who is obligated on this Account dies; you fail to maintain the required insurance on the Mortgaged Property; you permit the filing of a lien senior to the Mortgage on the Mortgaged Property; the Mortgaged Property is taken by eminent domain; or a prior lienholder forecloses on the Mortgaged Property.

(b) **Acceleration of the Outstanding Balance.** Unless prohibited by law, if this Account is Terminated by default, we may, at our option, after any notice required by law and the expiration of any time required by law during which you may cure a default, declare due and payable the entire balance owing on this Account. If this happens, you will be required to pay the outstanding balance on this Account in one payment at that time. If you are in default under the previous section titled "Termination of Account: Upon Default" during the Repayment Period or during a time when this Account is already Terminated, we may after any notice required by law and the expiration of any time required by law during which you may cure a default, declare the entire balance due and payable, we can bring suit for the entire balance owing on this Account. If we declare the entire balance due and payable, we can bring suit for the amounts due, foreclose the Mortgage, or take other action as permitted or provided by law to collect the balance owing.

(c) **Suspension of Credit Privileges or Reduction of Maximum Credit.** If any of the conditions listed in this section occurs, we may, without giving a notice of our action to you, temporarily Suspend your ability to obtain loans from this Account and/or reduce the Credit Limit applicable to this Account during any period in which:

(i) The value of the Mortgaged Property, as evidenced by an appraisal which we obtain, has declined significantly below the appraised value for the purposes of this Account. We may from time to time obtain appraisals of the Mortgaged Property at our expense. If we prohibit additional extensions of credit or reduce the Credit Limit because of a significant decline in the value of the Mortgaged Property, and the value of the Mortgaged Property subsequently increases, you may provide us with a written request to remove the restrictions, which request shall be accompanied by an appraisal of the Mortgaged Property obtained by you at your expense. For the purpose of this section, an appraisal shall be defined as a certified appraisal by a licensed or certified real estate broker or appraiser, as employed by law or regulation, who regularly, in the course of business, makes appraisals of comparable residential real estate in the geographic area where the Mortgaged Property is located.

(ii) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances. From time to time we may require you to provide a personal financial statement in a form substantially similar to the application for this Account. You agree to provide such financial statement in no more than one month from the date of our request. From time to time, we may also base our decision on you, and you agree that we may do so. If based on your financial statement or your credit report, or both, we reasonably believe that you will be unable to fulfill the repayment obligation because of a material change in your financial condition, we may prohibit additional extensions of credit or reduce the Credit Limit on this Account. If you advise us that the the material change in your finances exists, you will provide us with a personal financial statement setting forth your then existing financial condition.

(iii) You file or are placed in bankruptcy.

(iv) You are in default of any Material Obligation set forth in paragraph called "You Agree."

If the circumstances upon which the prohibition of additional extensions of credit or the reduction of the Credit Limit were based shall cease to exist, we shall again be obligated to permit extensions of credit on this Account and to restore your Credit Limit. The obligation shall commence promptly after we receive a written request from you accompanied by reasonable evidence that the condition which gave rise to the prohibition no longer exists, and we have had a sufficient time to verify such evidence.

(d) **Prohibition of Additional Extensions of Credit and Reduction of the Maximum Credit; Additional Circumstances.** We may also temporarily Suspend your ability to obtain loans from this Account or reduce your Credit Limit if any of the conditions listed in this section shall occur. We will give you notice of our action. If the circumstances later change so that the condition no longer exists, we shall again be obligated to allow extensions of credit and to restore your Credit Limit. We will give you notice that the credit is again available.

(i) The Index described in the Variable Rate section under the Finance Charge paragraph plus the Base Account Margin disclosed on page one exceeds the Maximum Corresponding Annual Percentage Rate disclosed on page one.

(ii) The limit of our security interest is adversely affected by government action to the extent that the value of our security interest is less than 120% of your Credit Limit.

(iii) We are notified by our regulatory agency that continued advances constitute an unsafe or unsound practice.

(iv) We are precluded by government action from imposing any Annual Percentage Rate provided in this Agreement.

(e) **Revocation of Special Rates.** In addition to our other remedies set forth in this Agreement, if you are in default by more than 60 days of any payment obligation set forth in the paragraph called "You Agree," we may, without notice to you, immediately (1) revoke any special promotional rates then in effect with respect to balances to a Tier; (2) transfer the balance in any and all Loans to the Base Account; and (3) increase the rate then in effect with respect to balances in any and all Loans. If we do any of these things, your Daily Periodic Rate and Corresponding Annual Percentage Rate for the balances will be the Daily Periodic Rate and Corresponding Annual Percentage Rate for the Base Account. If you subsequently cure the default, the rates will return to the rate applicable as if no default had occurred, this will happen after we have had a sufficient time to verify that any default under this Agreement has been cured and we have had a reasonable time to adjust the rates.

21. **Prohibition of Additional Extensions of Credit at Your Request.** Any of you may direct us to prohibit further extensions of credit on this Account. A notice by any one of you that you do not intend to be obligated for additional loans on this Account shall be considered a request to prohibit further extensions of credit on this Account. The prohibition shall become effective as soon as we can reasonably act to stop new loans from being made. All of you who are obligated on this Account must request in writing reinstatement of this Agreement for the request to be effective.

22. **Limitation of Indebtedness at Your Request.** If you deliver to us a written notice requesting that the indebtedness on this Account be limited, our obligation to make further loans from this Account shall be terminated or amended, as provided by applicable law in the state where the Mortgaged Property is located. You agree to follow the requirements of applicable law with respect to the notice of limitation of indebtedness on the Account.

23. **Costs of Collection.** If permitted by applicable law, if we file suit or take action to collect this Account or protect the collateral or our security interest in it, we shall charge you our cost and expenses to do so. This shall include a reasonable attorney' fees and a no expenses o to the maximum a mount permitted by applicable law.

24. **Changes to Your Account.** We may make the following changes to this Account:

We may change the Index and the Margins if the Index is no longer available. If we do so, we will choose an index with a historical movement substantially similar to the movement of the original Index and we will

choose new Margins so that the new index and new Margins will result in Annual Percentage Rates substantially similar to the rates in effect at the time the original Index became unavailable.

(b) We may make any change to which you specifically agree in writing, including, but not limited to, any mutually agreeable extension of the Draw Period.

(c) We may make a change that will unequivocally benefit you during the remaining term of this Account.

(d) We may make a change which is insignificant under applicable federal law.

(e) If you purchased credit insurance, we may pass on to you any increase in premiums for that insurance.

(f) If required by applicable law, we will mail you a written notice prior to the effective date of any change, in accordance with that law, of any changes. Changes will apply to outstanding balances and new loans except as otherwise stated in the notice.

**25. Monthly Statements and Payments.** We will send you a monthly statement for each billing cycle in which:

(a) activity is posted to your Account;

(b) we impose a finance charge to your Account; or

(c) if there is a debit or credit balance of more than $1.00 in your Account.

The statement will show loans made, the amount due, Finance Charge, payments made and the balance which you owe. All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address disclosed on your monthly statements. Unless you notify us in writing of errors in the statement within 60 days from the date it is mailed, the statement shall be considered correct and accepted by you. We need not mail you a statement if we deem this Account uncollectable or if delinquency collection proceedings have been started by us. If there is more than one Borrower, each agrees that if the statement is sent to and accepted by any of you, it shall be considered correct as to and accepted by all of you. If there is more than one Borrower, we will mail the statement to the first Borrower identified on page one.

**26. Checks on Your Account.** We shall retain all checks drawn on your Account and paid. We will not have to certify any checks drawn on your Account. You must not use any check drawn on your Account to (a) make a payment due under this Agreement; or (b) buy, carry, trade in, or repay any indebtedness incurred in connection with any security that is "margin stock" or a "margin security" for purposes of Regulation U or Regulation T of the Board of Governors of the Federal Reserve System.

**27. Stop Payment.** Procedures and laws applicable to stop payment of checks in connection with transactions on regular checking accounts with Manufacturer and Traders Trust Company shall apply to checks under this Agreement. Stop Payment orders are subject to a fee, if the Stop Payment Fee set forth on page one is applicable. You may place a stop payment order at any branch office, or by calling us or writing us at the address stated in the Billing Rights Notice which will be on each Billing Statement.

**28. Communications Concerning Disputed Debts.** ALL COMMUNICATIONS BY YOU TO US CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE ACCOUNT, SHOULD BE SENT TO THE ADDRESS STATED IN THE BILLING RIGHTS NOTICE WHICH WILL BE ON EACH BILLING STATEMENT.

**29. Notices.** We will send notices to you to your last known address in our files. Notices sent to that address will be effective for all purposes under this Agreement. We will send them by regular mail unless applicable law requires us to use certified or registered mail. Unless applicable law requires otherwise, a notice sent to any of you shall be considered sent to all of you, and a notice received by any one of you shall be considered received by all of you.

**30. Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges for this Account.

**31. Periodic Credit Review.** At our option, we may obtain updated consumer reports and income verifications on you as is reasonably necessary to protect our interests.

**32. Remedies Cumulative.** If any circumstance exists which would permit us to temporarily prohibit further extensions of credit on this Account or reduce the Credit Limit or terminate this Account and accelerate the balance: (a) we may take such action at any time during which such circumstance continues to exist; and (b) our remedies under this Agreement shall be cumulative and not alternative.

**33. Delay in Enforcement.** We can delay in enforcing any of our rights under this Agreement without losing them. Any waiver by us of any provision of this Agreement will not be a waiver of the same or any other provision on any other occasion.

**34. Assignment.** You may not assign or otherwise transfer your rights and privileges under this Agreement, or delegate your obligations to repay amounts you owe us. Any attempt to assign or delegate will be void and of no effect. We may assign any and all of our rights under this Agreement at any time without your consent. A person(s) to whom we assign this Agreement shall be entitled to all of our rights under this Agreement. None of your rights or obligations shall be affected by such assignment.

**35. Severability.** If any provision of this Agreement is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**36. Waiver.** Borrower or Owner waive all defenses based on suretyship and impairment of collateral or security.

**37. Your Responsibilities.** If more than one of you has signed this Agreement, all of you are equally responsible, individually and together, to us for payment in full of this account and performance of all obligations under this Agreement.

**38. Governing Law and Construction.** This Agreement has been accepted by us in New York and all loans shall be extended by us to you in New York. Regardless of the state of your residence or the place to which you submitted an application, you agree that the provisions of this Agreement relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, New York law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the laws of New York without regard to its principles of conflict of law; procedural matters relating to the enforcement of the obligations stated in this Agreement and matters relating to the granting, perfection and enforcement of the security interest securing this Agreement shall be governed by the laws of the state where enforcement, granting or perfection takes place.

EACH OF YOU ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT AND BY SIGNING THIS AGREEMENT INDICATES YOUR INTENTION TO BE LEGALLY BOUND BY THIS AGREEMENT, INCLUDING THE PARAGRAPHS ON ALL PAGES OF THIS AGREEMENT.

_____                                    5 - 8 - 06
Signature of borrower 1 Kenneth P. Ray                                              Date

_____                                    05·08·2006
Signature of borrower 2 Tracy S. Ray                                                Date

_____

_____

_____

_____

## ACKNOWLEDGMENT

STATE OF PENNSYLVANIA                    )
                                         ) SS:
COUNTY OF WASHINGTON                     )

On this 8th day of May ,2006, before me, Lona Mastiano , the undersigned officer (who certifies that he/she is not an officer or director of M&T Bank), personally appeared Kenneth P. Ray, Tracy S. Ray known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunder set my hand and official seal.

_____
Signature of Notary Public

LONA A. MASTIANO
Type or Print Name of Notary Public

BSA
Comm. exp. 12-01-09    Title

If the acknowledgment is taken in Pennsylvania, the Notary Public may not be an officer or director of M&T Bank.

# Rider to M&T Home Equity Account Agreement and Disclosure Statement

This Rider amends your M&T Home Equity Account Agreement and Disclosure Statement. For the time period shown below, called the "Discount Period", you will receive a discount in the value of the Margins shown on page one of your Agreement for the Base Account and for the Loans. These discounted Margins will result in a discount to the Daily Periodic Rates and the Corresponding Annual Percentage Rates shown on page one of your Agreement for the Base Account and for the Loans. At the end of the Discount Period, your Margins will return to the values shown on page one of your Agreement for the Base Account and for the Loans, resulting in the Daily Periodic Rates and Corresponding Annual Percentage Rates for the Base Account and Loans to be based on the full value of the non-discounted Margins and the Index described in your Agreement. This means that even if there are no increases to the Index during the Discount Period, your Daily Periodic Rates and Annual Percentage Rates can increase.

- Discount Period:

  The Discount Period for the Base Account will be in effect from the date of your Agreement through the first 6 billing cycles of your Account.

  The Discount Period for the Loans will be in effect from the date of your Agreement through the first billing cycle of your Account.

- Discount Period Margin:

  During the Discount Period, your Margin(s) will be as follows:

  | | |
  |---|---|
  | Base Account | **-1.51 %** |
  | 12 to 36 Month Loans | **-1.26 %** |
  | 37 to 72 Month Loans | **-1.26 %** |
  | 73 to 180 Month Loans | **-0.76 %** |

  After the Discount Period, your Margin(s) will revert to the value(s) shown on page one of your Agreement.

- Disclosures as to **Daily Periodic Rates** and Corresponding **Annual Percentage Rates**:

  Because of the discount in the Margin during the Discount Period, your Daily Periodic Rates and Corresponding Annual Percentage Rates will likewise be discounted. The chart below shows these discounted rates as well as the rates that would have been in effect had there been no discount in the Margins:

| Term | Discounted (Promotional) | | Non-Discounted | |
|---|---|---|---|---|
| | DPR % | APR % | DPR % | APR % |
| Base Account | .0170958 | 6.24 | .0205479 | 7.50 |
| 12 to 36 Months Loan | .0177808 | 6.49 | .0294520 | 10.75 |
| 37 to 72 Months Loan | .0177808 | 6.49 | .0308219 | 11.25 |
| 73 to 180 Months Loan | .0191506 | 6.99 | .0321917 | 11.75 |

Note:  **DPR – Daily Periodic Rate**
**APR – Annual Percentage Rate**
**N/A – No Discount Available**

- Additional Variable Rate Disclosures:

    For the rules relating to how your rates can vary, what the maximum rates can be, and the effects of a rate increase on your payments, both during and after the Discount Period, and for the Base Account and all Loans, refer to Sections 8(f) and 8(g) of your Agreement respectively.

Except as amended here, all other terms, conditions and disclosures set forth in your Agreement continue to apply in full force and effect.

**ALL PERSONS SIGNING THE AGREEMENT MUST SIGN THIS RIDER, IN THE SAME CAPACITY, AND EACH ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS RIDER, AS OF THE DATE OF THE AGREEMENT.**

| | |
|---|---|
| _Kenneth P. Ray_ | 5/8/06<br>Date |
| _Tracy S. Ray_ | 5/8/06<br>Date |
| | Date |
| | Date |
| | Date |
| | Date |

Prepared By: Manufacturers & Traders Trust Company
Return to:  Manufacturers & Traders Trust Company
1 Fountain Plaza 4th Floor Buffalo, NY 14203
Attn: Documentation and Collateral



RECORD & RETURN TO:
GROUP9, INC.
2005 CABOT BLVD. WEST
LANGHORNE, PA 19047

 M&T Bank

# OPEN - END MORTGAGE

## HOME EQUITY LINE OF CREDIT

### Manufacturers and Traders Trust Company

NOTICE TO BORROWER: This document contains provisions for a variable interest rate and
secures future advances

Ref. No                                                    **Date : May 08, 2006**

Borrower 1's Name    Kenneth P. Ray
Borrower 1's Address  11734 Ridge Rd, Greencastle, PA 172259115

Borrower 2's Name    Tracy S. Ray
Borrower 2's Address  11734 Ridge Rd, Greencastle, PA 172259115

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Franklin County, Pennsylvania

*Linda Miller*
Linda Miller
Recorder of Deeds

H950

2006 MAY 19 A 10: 35
LINDA MILLER
RECORDER OF DEEDS
FRANKLIN COUNTY

RECORDED

Mortgagee: Manufacturers and Traders Trust Company
Mortgaged real estate: 11734 Ridge Rd, Greencastle, Franklin, PA  172259115
Original Deed Liber: **1990**     Original Deed Page: **100**    Tax Parcel #: **01 A23 8**
Maximum principal amount: $ 40,000.00
(FORTY THOUSAND DOLLARS AND 00 CENTS)

THIS OPEN-END MORTGAGE SECURES FUTURE ADVANCES UP TO A MAXIMUM INDEBTEDNESS OF
$40,000.00, EXCLUSIVE OF INTEREST AND EXCLUSIVE OF ADVANCES THAT MAY BE MADE BY US
UNDER THE PROVISIONS OF PARAGRAPHS 7, 8, 9, 10, 11, 17 AND 22 OF THIS MORTGAGE.

**1. Meaning of some words.** In this mortgage, (a) "you"
and "your" mean anyone signing this mortgage, whether
as a borrower or other owner, (b) "we," "us," "our" and
"ours" mean Manufacturers and Traders Trust Company,

One M&T Plaza, Buffalo, New York 14240, (c) "the
loan agreement" means a home equity line of credit
account agreement dated the date of this mortgage and
signed by everyone signing this mortgage as a borrower

File Ref #                                    Page 1

VOL 3140 PG 359

and us, as the agreement exists now or is changed in the future, or any replacement of the agreement, as the replacement exists when signed or is changed after that, (d) "the indebtedness" means, taken together, all amounts payable now or becoming payable in the future under the loan agreement and this mortgage, (e) "the property" means the real estate, rights and rental payments described in Section 2, and (f) "prior mortgage" means any document giving a presently existing mortgage lien covering any of the property, as the document exists now or is changed in the future, or any replacement of the document, as the replacement exists when signed or is changed after that.

**2. Mortgage lien.** To secure the payment of the indebtedness, you give us a mortgage lien covering and hereby mortgage, grant and convey to us (a) the real estate commonly described by the address shown at the beginning of this mortgage, as the mortgaged real estate and described more fully by the legal description set forth in Schedule A, including all buildings and other improvements located now or placed in the future on the real estate and all fixtures that are now or become in the future part of the real estate by being installed in or on or affixed to the real estate, (b) all rights you have now or acquire in the future in the real estate or other real estate because you own the real estate, including, if the real estate is part of a condominium project, rights in the common areas and facilities of the condominium project, and (c) all rental payments from any of the real estate. If the real estate is part of a condominium project or planned unit development, the name of the condominium project or planned unit development is set forth in Schedule A. Examples of fixtures are furnaces, hot water heaters, bathtubs, sinks and kitchen cabinets installed in a building. An example of a right in real estate that arises because of the ownership of the real estate is the right to money payable because of the taking of any of the real estate by a governmental body or because of any transfer of ownership of any of the real estate instead of its taking by a governmental body. An example of a right in other real estate that arises because of the ownership of real estate is the right to cross the other real estate to get to a street.

**3. Loan agreement and late fee.** The loan agreement limits the total principal amount of advances and readvances obtained under the loan agreement and at any time outstanding to the maximum principal amount shown at the beginning of this mortgage. The loan agreement provides for a n a nnual p ercentage r ate and required minimum payments that can vary. It also provides for a late fee of 2% of the unpaid amount of any minimum payment not paid within 15 days after it becomes due, or $20.00 whichever is greater. You agree that the interest rate set forth in the loan agreement will continue before and after a default, entry of judgment and foreclosure.

**4. Prior mortgage.** You assure us that (a) you have notified us in writing of any prior mortgage, (b) there is no d efault under a ny p rior mortgage and ( c) no p rior mortgage prohibits you from giving us the mortgage lien you are giving us in this mortgage.

**5. Ownership, claims and right to give mortgage lien.**

You assure us that (a) you own the property, (b) the property is free from any claim, except for any claim of record on the date of this mortgage, and (c) you have the right to give us the mortgage lien you are giving us in this mortgage. You warrant title to the property, which means that you will be responsible for any loss we suffer because anyone other than you has any claim to any of the property, except for any claim of record on the date of this mortgage.

**6. Payment of indebtedness.** Unless otherwise provided in section 23, you must pay the indebtedness.

**7. Taxes, assessments, rents, and charges.** You must pay any tax, assessment, ground rent, sewer rent or water charge on the property and any other tax or other charge that, if unpaid, could become a claim on the property superior to the mortgage lien you are giving us in this mortgage, and, if you do not pay it within the time within which it can be paid without any penalty, we can, but we will not have to, pay it. When we ask you to do so, you must reimburse us for it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on its unreimbursed portion as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**8. Repairs and rebuilding.** You must promptly repair or rebuild any building that is now or becomes in the future part of the property if it is damaged or destroyed, and, if you do not do so, we can, but we will not have to, repair or rebuild it. When we ask you to do so, you must reimburse us for any amount we pay to repair or rebuild it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**9. Restrictions on use.** Y ou must n ot use a ny o f t he property, or allow any of it to be used, in any way that violates any legal restriction affecting its use, and, if you do so, we can, but we will not have to, correct the violation. When we ask you to do so, you must reimburse us for any amount we pay to correct it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**10. Insurance.** You must keep any building that is now or becomes in the future part of the property insured for our benefit against loss by (a) fire, (b) any risk covered by extended coverage,(c) flood if the building is located in an area that has been identified by the Federal Emergency Management Agency as an area having special flood hazards and for which flood insurance has been made available under the National Flood Insurance Act of 1968 or (d) any other risk against which we want it insured. The insurance must be provided under a policy or policies and by a company or companies acceptable to us. Without limiting the proceeding

Page 2

VOL 3 1 4 0 PG 360

Case 1:22-bk-00036-HWV    Doc 33-4    Filed 03/30/22    Entered 03/30/22 12:55:25    Desc
Loan Documents    Page 13 of 27

sentence, any policy providing any of the insurance must contain a standard mortgage clause in our favor. You must deliver to us any policy providing any of the insurance unless it is being held by any institutional lender that is the owner of any prior mortgage and you notify us that it is being held by the institutional lender. When we ask you to do so, you must reimburse us for any premium for any of the insurance we pay because you do not deliver to us the policy providing that insurance or because you do not notify us that the policy providing that insurance is being held by the institutional lender. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the premium as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure. If any building that is now or becomes in the future part of the property is damaged or destroyed, you must promptly notify any company providing any of the insurance on the building of the damage or destruction and provide to the company whatever proof of the damage or destruction it requires. If you do not do so, we can, but we will not have to, do so. If the company offers to settle a claim for money payable under that insurance and you do not respond to the claim within 30 days after the date the company makes the offer, we can, but we will not have to, settle the claim. We can apply any money paid under any of the insurance to any of the indebtedness not yet paid in any order we choose or give it to you to repair or rebuild the building. The application of the money will not relieve you of any obligation to pay any future minimum payment required under the loan agreement.

**11. Payment of taxes, assessments, rents, charges and premiums.** To make sure that taxes, assessments, ground rents, sewer rents and water charges on the property and premiums for insurance on the property are paid, we can require that, subject to any limitation imposed by applicable law, you must pay us all amounts necessary to pay those items except to the extent that you pay the money for those items to any institutional lender that is the owner of any prior mortgage. We will hold any money you pay us for those items in an escrow account, but we will not hold any money "in trust" and no escrow account will be a trust account. We will not pay interest on the money. To the extent that we are holding money in the escrow account to pay any of those items, we will pay it within the time within which it can be paid without any penalty. If the amount of money in the escrow account is less than the amount we pay for those items, you must, when we ask you to do so, pay us the difference whether we paid before or after foreclosure, and you must, when we ask you to do so, pay us interest on the unpaid portion of the difference as though the unpaid portion were an amount on which you had to pay a finance charge under the loan agreement.

**12. Money paid for taking.** We can a) direct any governmental body or other organization taking any of the property or receiving a transfer of ownership of any of the property instead of taking it to pay directly to us all money you are entitled to for the taking or transfer and b) apply the money to any of the indebtedness not yet paid in any order we choose. The application of the money will not relieve you of any obligation to pay any

future minimum payment required under the loan agreement.

**13. Money paid u nder insurance on condominium project or planned unit development.** If the property includes a unit in a condominium project or planned unit development, you must pay to us any money paid to you under any insurance on the whole condominium project or planned unit development. We can apply the money to any of the indebtedness not yet paid in any order we choose rather than giving it to you to repair the unit. The application of the money will not relieve you of any obligation to pay any future minimum payment required under the loan agreement.

**14. Some other promises.** You must (a) keep the property in good condition, (b) allow us to inspect the property at any time, (c) immediately notify us in writing if any building that is now or becomes in the future part of the property is damaged or destroyed, (d) not use any of the property, or allow any of it to be used, illegally or in a ny way no t a llowed b y a ll p olicies p roviding a ny insurance on it, (e) not abandon any of the property, (f) not transfer ownership of any of the property or any interest in any of it without first obtaining our permission in writing unless permitted to do so by federal law, (g) not remove, tear down, structurally alter or change the use of any building or other improvement that is now or becomes in the future part of the property without first obtaining our permission in writing, (h) not transfer any right to receive any rental payment from any of the property to anyone other than us without first obtaining our permission in writing, (i) not change or cancel any lease covering any of the property without first obtaining our permission in writing, (j) not accept any rental payment from any of the property more than 1 month in advance without first obtaining our permission in writing, (k) not place any restriction on the sale or use of any of the property based on any characteristic prohibited by applicable law, (l) promptly provide a complete copy of any prior mortgage to us if we ask you to do so, (m) pay any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage by the date it becomes due, (n) perform all of your other obligations under any prior mortgage or any note or other agreement to which it relates now or in the future, (o) promptly notify us in writing of any default under any prior mortgage, (p) pay any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage n o later than 5 days before the date it is to become due if we ask you to do so, (q) provide to us no later than 3 days before the date any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage is to become due evidence satisfactory to us that the amount has been paid if we ask you to do so, (r) not enter into any agreement changing any prior mortgage, (s) not obtain any additional advance the repayment of which is secured by the mortgage lien given in any prior mortgage, (t) use your best efforts to have the owner of any prior mortgage send us a copy of any notice the owner is required to send you, (u) promptly provide to us a copy of any notice you receive from the owner of any prior mortgage and (v) promptly sign any document we at any time consider necessary to help us protect our interest in any of the property.

**15. Additional promises if property includes unit in condominium project or planned unit development.** If the property includes a unit in a condominium project or planned unit development, you must (a) pay any assessment imposed by the owners association or other organization that governs the condominium project or planned unit development by the date it becomes due, (b) perform all of your other obligations under any declaration, by-laws or other document that creates or governs the condominium project or planned unit development, (c) promptly notify us in writing if any policy providing any insurance on the whole condominium project or planned unit development is suspended or terminated, (d) not consent to the abandonment or termination of the condominium project or planned unit development unless the abandonment or termination is required by applicable law without first obtaining our permission in writing, (e) not consent to any significant change in any declaration, by-laws or other document that creates or governs the condominium project or planned unit development without first obtaining our permission in writing, (f) not consent to any decision by the owners association or other organization that governs the condominium project or planned unit development to terminate professional management, and begin self-management, of the condominium project or planned unit development without first obtaining our permission in writing and (g) not consent to any transfer, release, partition or subdivision of, or the creation of any lien on, any of the common areas and facilities of the condominium project or planned unit development other than for utilities and similar uses without first obtaining our permission in writing.

**16. Statement of amount due.** When we ask you to do so, you must give us a written statement acknowledged before a notary public notifying us of the total amount of the indebtedness not yet paid and whether there is any reason you should not have to pay it.

**17. Correcting default under prior mortgage.** We can, but we will not have to, make any payment we consider necessary to correct any default under any prior mortgage. When we ask you to do so, you must reimburse us for the payment. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the payment as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement.

**18. Assignment of rents.** You assign to us all rental payments from any of the real estate. The assignment will become operative when, after we declare all amounts owing under the loan agreement immediately due, we make a written demand that the rental payments be paid to us.

**19. Foreclosure.** If after giving such notices of right to cure and of emergency mortgage assistance as are required by applicable law all amounts payable under the loan agreement but not yet paid become immediately due, whether because we declare them immediately due or in any other way, we can bring a lawsuit to foreclose our interest in the property by having it sold as provided by law. The property can be sold in 1 parcel or more than 1 parcel. We will apply the money we receive from the sale (a) first to expenses we pay for advertising, arranging or conducting the sale (including attorney's fees as provided in Section 21) and (b) then to any of the indebtedness not yet paid in any order we choose. You must immediately pay us all of the indebtedness remaining unpaid after we apply money we receive from the sale.

**20. Receiver.** If you default, we will be entitled to have a receiver appointed by a court to manage the property. Without limiting any authority given the receiver by the court or applicable law, in managing the property, the receiver can (a) take possession of any of the property, (b) enter into, change or cancel any lease covering any of the property and (c) collect any rental payment from any of the property. The receiver will apply any money the receiver receives from managing the property (a) first to expenses we pay or the receiver pays as a result of having the receiver manage the property (including attorney's fees as provided in Section 22, any fee for the receiver and any premium for any bond for the receiver) and (b) then to any of the indebtedness not yet paid in any order we choose.

**21. Foreclosure and collection costs.** If we hire an attorney who is not a salaried employee of ours to bring a lawsuit to foreclose our interest in the property or collect in any other way any of the indebtedness not yet paid, you must, when we ask you to do so, pay us the attorney's fee, all court costs we pay for the lawsuit and all other expenses we pay in connection with the foreclosure, such as any fee for any examination, report or other evidence of title to any of the property.

**22. Other legal expenses.** If we hire an attorney who is not a salaried employee of ours to protect any of our rights in any of the property, whether because of any lawsuit brought by you or anyone else (such as a bankruptcy, probate or condemnation proceeding) or for any other reason, you must, when we ask you to do so, reimburse us for the attorney's fee and all other expenses we pay in connection with the lawsuit or defense whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the attorney's fees and other expenses as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**23. Other owner.** Anyone signing this mortgage as an other owner gives us the mortgage lien described in Section 2 and will be bound by all provisions of this mortgage, except that he or she will not have to pay any amount payable now or becoming payable in the future under the loan agreement.

**24. Notices.** Any notice we send you concerning this mortgage or any of the property will be sent to your current mailing address shown in our records concerning this mortgage. Except to the extent prohibited by applicable law, we can send it by regular mail. Any notice you send or deliver to us concerning this mortgage must be in writing and be sent or delivered to our address shown in Section 1 or any other address we specify, including without limitation any notice under 42

PA. C.S.A.   § 8143.

**25. Separate lien.** The mortgage lien you are giving us in this mortgage is and will remain separate from, and will not be merged into, the mortgage lien given in any prior mortgage or any other mortgage lien owner of this mortgage, we will have all rights given us by this mortgage and also all rights given to the owner of a mortgage by applicable law.

**26. Rights as owner of mortgage.** As the owner of this mortgage, we will have all rights given us by this mortgage and also all rights given to the owner of a mortgage by applicable law.

**27. Giving up of rights by you.** You give up any right to require that we (a) demand that you pay any of the indebtedness, (b) notify you if any of the indebtedness is not paid by the date it becomes due or (c) obtain a certificate stating that any of the indebtedness was not paid by the date it became due.

**28. No notice or loss of rights.** We can do any of the following without notifying you or losing any right against you, the property or any other property belonging to you now or acquired by you in the future: (a) accept any check or other order marked "paid in full" or with similar language as a payment of any of the indebtedness; (b) give additional time for the payment of any of the indebtedness, regardless of the number of times we previously did so and regardless of the length of any additional time we previously gave; (c) exercise, give up, f ail t o e xercise o r d elay exercising any r ight against any person or property; or (d) fail to protect any interest in any property, whether by failing to file or record any document that must be filed or recorded in a public record or in any other way. For example, we can sue you under this mortgage whether or not we (a) sue anyone else, (b) bring a lawsuit to foreclose our interest in the property or (c) use any money that has been or is deposited with us by you or anyone else to pay any of the indebtedness not yet paid.

**29. Changes and giving up of rights by us.** No change in this mortgage can be made except in a writing signed by us. No right against you, the property or any other property belonging to you now or acquired by you in the future can be given up by us except in a writing signed by us.

**30. If 2 or more persons sign mortgage.** If 2 or more persons sign this mortgage, all of them will be, individually and together, liable under it, and, except to the extent required by applicable law, we can send or deliver any notice concerning it to any of them, and the notice will be effective for all of them.

**31. Conflicts.** If any part of this mortgage conflicts with applicable law, the law will control, and this mortgage will be considered c hanged to the extent n ecessary to comply with it.

**32. Continued effectiveness.** If any part of this mortgage is determined by a court to be invalid, the rest will remain in effect.

**33. Early release of mortgage.** This mortgage and the mortgage lien you are giving us in this mortgage will not end merely because the indebtedness is paid in full at any time during the period advances can be obtained under the loan agreement. They will end during that period only if we release t hem. We will release them during that period upon a request made by you as long as at the time we do so the indebtedness is paid in full.

**34. What law applies.** Any legal question concerning this mortgage will be decided in accordance with (a) Pennsylvania law without regard to the law of any other state and (b) to the extent applicable, federal law.

**35. Entire agreement.** This mortgage is the final and complete agreement between you and us concerning the mortgage lien you are giving us in this mortgage. Any statement concerning the mortgage lien made by any of our employees or anyone else is not part of this mortgage.

**36. Agreement and acknowledgment of receipt.** You agree to be legally bound by all provisions of this mortgage and acknowledge receipt of a completed copy of the loan agreement and of this mortgage.

_Signature of borrower 1  Kenneth P. Ray_                                  5 / 8 / 06
                                                                         Date

_Signature of borrower 2  Tracy S. Ray_                                    5 / 8 / 06
                                                                         Date

Page 6

## SIGNATURE ACKNOWLEDGMENT

~~COMMONWEALTH OF PENNSYLVANIA~~ *STATE* *MARYLAND*          )
                                                             )  ss:
**COUNTY OF WASHINGTON**                                     )

On this, the _8th_ day of _May_____, 2006, before me, a Notary Public, the undersigned officer, personally appeared Kenneth P. Ray, Tracy S. Ray known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

[Notarial Seal]

My commission expires:

_12-01-2009_

I certify that the precise residence of the within named mortgagee, Manufacturers and Traders Trust Company, is One M&T Plaza, Buffalo, New York 14240.

Signature _____
Agent on behalf of mortgagee

**Schedule A to be attached prior to recording**

OPEN-END MORTGAGE
FROM

Kenneth P. Ray
Tracy S. Ray

TO

Manufacturers and Traders
Trust Company

Record and return to:
Manufacturers and Traders
Trust Company
One Fountain Plz – 4th floor
Buffalo, NY 14203
Attn: Documentation &
Collateral

Page 7

VOL 3140 PG 365

## 'Schedule A'

NAME(S):      KENNETH P. RAY AND TRACY S. RAY

LONG LEGAL: ALL THAT CERTAIN PARCEL OR TRACT OF LAND SITUATE IN THE TOWNSHIP OF ANTRIM, COUNTY OF FRANKLIN, COMMONWEALTH OF PENNSYLVANIA AND BEING THE SAME REAL PROPERTY CONVEYED TO KENNETH P. RAY AND TRACY S. RAY BY DEED ON 11/04/2002 AS DOCUMENT NO. 2002-070677 BOOK 1990 PAGE 100 AMONG THE OFFICIAL RECORDS OF FRANKLIN COUNTY, COMMONWEALTH OF PENNSYLVANIA. SAID DEED REFERENCE MADE HEREIN FOR A MORE FULL DESCRIPTION.

TAX MAP#:      01-A23-8

Hogan or Shaw account # ████████████████████

Name: _Kay_ _____ _B._ _____ _Kenneth_ _____
(last)          (middle)          (first)

## REQUIRED DOCUMENTATION FOR THIN FILE

***MBNA Visa Applications – Please ensure that there is only a photocopy in the file. If signed original, make copy for thick file and place signed original in VISA app tray.

Follow Up Required:

|  |  | Person Resolved | Date Resolved |
|---|---|---|---|
| ☐ | M&T Home Equity Account Agreement (HELOC only) **OR** | | |
| | Modification Agreement Amendment (Increase or Decrease only) **OR** | | |
| ☐ | Truth in Lending (JUMBO only) | | |
| ☐ | M&T Home Equity Account Rider (HELOC only) | | |
| ☐ | RBP (Risk Based Pricing) Form for NY Increase | | |
| ☐ | Settlement Statement – HUD 1A (JUMBO only) | | |
| ☐ | Second Original Mortgage (or photocopy of mortgage) | | |
| ☐ | Notice of Right to Cancel | | |
| ☐ | Appraisal ☐ Decrease – No Search | | |
| ☐ | Title Search ☐ SIMO/Decrease – No Search | | |
| ☐ | Homeowner's Insurance Policy or Binder | | |
| ☐ | Flood Certification | | |
| ☐ | Flood Acknowledgement Form (if applicable) | | |
| ☐ | Flood Insurance Policy or Binder (if applicable) | | |

Completed by: __**Gina B. Gibbs**__     Date: _5/18/06_

---

☐ Final Title Insurance Policy

Received by Post Closing Representative: _____     Date: _____

---

☐ Recorded Mortgage/Deed of Trust
☐ Recorded Mortgage Modification

Received by Vault Representative: _____     Date: _____

---

Comments: _____

Prepared By: Manufacturers & Traders Trust Company
Return to: Manufacturers & Traders Trust Company
1 Fountain Plaza 4th Floor Buffalo, NY 14203
Attn: Documentation and Collateral
Parcel ID ███████████



 **M&T Bank**  **OPEN - END MORTGAGE**

# HOME EQUITY LINE OF CREDIT

### Manufacturers and Traders Trust Company

NOTICE TO BORROWER: This document contains provisions for a variable interest rate and secures future advances

Ref. No ███████████                          **Date : May 08, 2006**

Borrower 1's Name     Kenneth P. Ray
Borrower 1's Address  11734 Ridge Rd, Greencastle, PA  172259115

Borrower 2's Name     Tracy S. Ray
Borrower 2's Address  11734 Ridge Rd, Greencastle, PA  172259115

**Mortgagee:** Manufacturers and Traders Trust Company
**Mortgaged real estate:** 11734 Ridge Rd, Greencastle, Franklin, PA  172259115
**Original Deed Liber: <u>1990</u>**     **Original Deed Page: <u>100</u>**     **Tax Parcel #: <u>01 A23 8</u>**
**Maximum principal amount:** $ 40,000.00
            (FORTY THOUSAND DOLLARS AND 00 CENTS)

THIS OPEN-END MORTGAGE SECURES FUTURE ADVANCES UP TO A MAXIMUM INDEBTEDNESS OF $40,000.00, EXCLUSIVE OF INTEREST AND EXCLUSIVE OF ADVANCES THAT MAY BE MADE BY US UNDER THE PROVISIONS OF PARAGRAPHS 7, 8, 9, 10, 11, 17 AND 22 OF THIS MORTGAGE.

**1. Meaning of some words.** In this mortgage, (a) "you" and "your" mean anyone signing this mortgage, whether as a borrower or other owner, (b) "we," "us," "our" and "ours" mean Manufacturers and Traders Trust Company, One M&T Plaza, Buffalo, New York 14240, (c) "the loan agreement" means a home equity line of credit account agreement dated the date of this mortgage and signed by everyone signing this mortgage as a borrower

Page 1

███████████

and us, as the agreement exists now or is changed in the future, or any replacement of the agreement, as the replacement exists when signed or is changed after that, (d) "the indebtedness" means, taken together, all amounts payable now or becoming payable in the future under the loan agreement and this mortgage, (e) "the property" means the real estate, rights and rental payments described in Section 2, and (f) "prior mortgage" means any document giving a presently existing mortgage lien covering any of the property, as the document exists now or is changed in the future, or any replacement of the document, as the replacement exists when signed or is changed after that.

**2. Mortgage lien.** To secure the payment of the indebtedness, you give us a mortgage lien covering and hereby mortgage, grant and convey to us (a) the real estate commonly described by the address shown at the beginning of this mortgage as the mortgaged real estate and described more fully by the legal description set forth in Schedule A, including all buildings and other improvements located now or placed in the future on the real estate and all fixtures that are now or become in the future part of the real estate by being installed in or on or affixed to the real estate, (b) all rights you have now or acquire in the future in the real estate or other real estate because you own the real estate, including, if the real estate is part of a condominium project, rights in the common areas and facilities of the condominium project, and (c) all rental payments from any of the real estate. If the real estate is part of a condominium project or planned unit development, the name of the condominium project or planned unit development is set forth in Schedule A. Examples of fixtures are furnaces, hot water heaters, bathtubs, sinks and kitchen cabinets installed in a building. An example of a right in real estate that arises because of the ownership of the real estate is the right to money payable because of the taking of any of the real estate by a governmental body or because of any transfer of ownership of any of the real estate instead of its taking by a governmental body. An example of a right in other real estate that arises because of the ownership of real estate is the right to cross the other real estate to get to a street.

**3. Loan agreement and late fee.** The loan agreement limits the total principal amount of advances and readvances obtained under the loan agreement and at any time outstanding to the maximum principal amount shown at the beginning of this mortgage. The loan agreement provides for an annual percentage rate and required minimum payments that can vary. It also provides for a late fee of 2% of the unpaid amount of any minimum payment not paid within 15 days after it becomes due, or $20.00 whichever is greater. You agree that the interest rate set forth in the loan agreement will continue before and after a default, entry of judgment and foreclosure.

**4. Prior mortgage.** You assure us that (a) you have notified us in writing of any prior mortgage, (b) there is no default under any prior mortgage and (c) no prior mortgage prohibits you from giving us the mortgage lien you are giving us in this mortgage.

**5. Ownership, claims and right to give mortgage lien.**

You assure us that (a) you own the property, (b) the property is free from any claim, except for any claim of record on the date of this mortgage, and (c) you have the right to give us the mortgage lien you are giving us in this mortgage. You warrant title to the property, which means that you will be responsible for any loss we suffer because anyone other than you has any claim to any of the property, except for any claim of record on the date of this mortgage.

**6. Payment of indebtedness.** Unless otherwise provided in section 23, you must pay the indebtedness.

**7. Taxes, assessments, rents, and charges.** You must pay any tax, assessment, ground rent, sewer rent or water charge on the property and any other tax or other charge that, if unpaid, could become a claim on the property superior to the mortgage lien you are giving us in this mortgage, and, if you do not pay it within the time within which it can be paid without any penalty, we can, but we will not have to, pay it. When we ask you to do so, you must reimburse us for it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on its unreimbursed portion as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**8. Repairs and rebuilding.** You must promptly repair or rebuild any building that is now or becomes in the future part of the property if it is damaged or destroyed, and, if you do not do so, we can, but we will not have to, repair or rebuild it. When we ask you to do so, you must reimburse us for any amount we pay to repair or rebuild it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**9. Restrictions on use.** You must not use any of the property, or allow any of it to be used, in any way that violates any legal restriction affecting its use, and, if you do so, we can, but we will not have to, correct the violation. When we ask you to do so, you must reimburse us for any amount we pay to correct it whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**10. Insurance.** You must keep any building that is now or becomes in the future part of the property insured for our benefit against loss by (a) fire, (b) any risk covered by extended coverage,(c) flood if the building is located in an area that has been identified by the Federal Emergency Management Agency as an area having special flood hazards and for which flood insurance has been made available under the National Flood Insurance Act of 1968 or (d) any other risk against which we want it insured. The insurance must be provided under a policy or policies and by a company or companies acceptable to us. Without limiting the proceeding

Page 2

sentence, any policy providing any of the insurance must contain a standard mortgage clause in our favor. You must deliver to us any policy providing any of the insurance unless it is being held by any institutional lender that is the owner of any prior mortgage and you notify us that it is being held by the institutional lender. When we ask you to do so, you must reimburse us for any premium for any of the insurance we pay because you do not deliver to us the policy providing that insurance or because you do not notify us that the policy providing that insurance is being held by the institutional lender. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the premium as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure. If any building that is now or becomes in the future part of the property is damaged or destroyed, you must promptly notify any company providing any of the insurance on the building of the damage or destruction and provide to the company whatever proof of the damage or destruction it requires. If you do not do so, we can, but we will not have to, do so. If the company offers to settle a claim for money payable under that insurance and you do not respond to the claim within 30 days after the date the company makes the offer, we can, but we will not have to, settle the claim. We can apply any money paid under any of the insurance to any of the indebtedness not yet paid in any order we choose or give it to you to repair or rebuild the building. The application of the money will not relieve you of any obligation to pay any future minimum payment required under the loan agreement.

**11. Payment of taxes, assessments, rents, charges and premiums.** To make sure that taxes, assessments, ground rents, sewer rents and water charges on the property and premiums for insurance on the property are paid, we can require that, subject to any limitation imposed by applicable law, you must pay us all amounts necessary to pay those items except to the extent that you pay the money for those items to any institutional lender that is the owner of any prior mortgage. We will hold any money you pay us for those items in an escrow account, but we will not hold any money "in trust" and no escrow account will be a trust account. We will not pay interest on the money. To the extent that we are holding money in the escrow account to pay any of those items, we will pay it within the time within which it can be paid without any penalty. If the amount of money in the escrow account is less than the amount we pay for those items, you must, when we ask you to do so, pay us the difference whether we paid before or after foreclosure, and you must, when we ask you to do so, pay us interest on the unpaid portion of the difference as though the unpaid portion were an amount on which you had to pay a finance charge under the loan agreement.

**12. Money paid for taking.** We can (a) direct any governmental body or other organization taking any of the property or receiving a transfer of ownership of any of the property instead of taking it to pay directly to us all money you are entitled to for the taking or transfer and (b) apply the money to any of the indebtedness not yet paid in any order we choose. The application of the money will not relieve you of any obligation to pay any

future minimum payment required under the loan agreement.

**13. Money paid u nder insurance on condominium project or planned unit development.** If the property includes a unit in a condominium project or planned unit development, you must pay to us any money paid to you under any insurance on the whole condominium project or planned unit development. We can apply the money to any of the indebtedness not yet paid in any order we choose rather than giving it to you to repair the unit. The application of the money will not relieve you of any obligation to pay any future minimum payment required under the loan agreement.

**14. Some other promises.** You must (a) keep the property in good condition, (b) allow us to inspect the property at any time, (c) immediately notify us in writing if any building that is now or becomes in the future part of the property is damaged or destroyed, (d) not use any of the property, or allow any of it to be used, illegally or in a ny way not a llowed b y a ll p olicies p roviding a ny insurance on it, (e) not abandon any of the property, (f) not transfer ownership of any of the property or any interest in any of it without first obtaining our permission in writing unless permitted to do so by federal law, (g) not remove, tear down, structurally alter or change the use of any building or other improvement that is now or becomes in the future part of the property without first obtaining our permission in writing, (h) not transfer any right to receive any rental payment from any of the property to anyone other than us without first obtaining our permission in writing, (i) not change or cancel any lease covering any of the property without first obtaining our permission in writing, (j) not accept any rental payment from any of the property more than 1 month in advance without first obtaining our permission in writing, (k) not place any restriction on the sale or use of any of the property based on any characteristic prohibited by applicable law, (l) promptly provide a complete copy of any prior mortgage to us if we ask you to do so, (m) pay any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage by the date it becomes due, (n) perform all of your other obligations under any prior mortgage or any note or other agreement to which it relates now or in the future, (o) promptly notify us in writing of any default under any prior mortgage, (p) pay any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage n o later than 5 days before the date it is to become due if we ask you to do so, (q) provide to us no later than 3 days before the date any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage is to become due evidence satisfactory to us that the amount has been paid if we ask you to do so, (r) not enter into any agreement changing any prior mortgage, (s) not obtain any additional advance the repayment of which is secured by the mortgage lien given in any prior mortgage, (t) use your best efforts to have the owner of any prior mortgage send us a copy of any notice the owner is required to send you, (u) promptly provide to us a copy of any notice you receive from the owner of any prior mortgage and (v) promptly sign any document we at any time consider necessary to help us protect our interest in any of the property.

**15. Additional promises if property includes unit in condominium project or planned unit development.** If the property includes a unit in a condominium project or planned unit development, you must (a) pay any assessment imposed by the owners association or other organization that governs the condominium project or planned unit development by the date it becomes due, (b) perform all of your other obligations under any declaration, by-laws or other document that creates or governs the condominium project or planned unit development, (c) promptly notify us in writing if any policy providing any insurance on the whole condominium project or planned unit development is suspended or terminated, (d) not consent to the abandonment or termination of the condominium project or planned unit development unless the abandonment or termination is required by applicable law without first obtaining our permission in writing, (e) not consent to any significant change in any declaration, by-laws or other document that creates or governs the condominium project or planned unit development without first obtaining our permission in writing, (f) not consent to any decision by the owners association or other organization that governs the condominium project or planned unit development to terminate professional management, and begin self-management, of the condominium project or planned unit development without first obtaining our permission in writing and (g) not consent to any transfer, release, partition or subdivision of, or the creation of any lien on, any of the common areas and facilities of the condominium project or planned unit development other than for utilities and similar uses without first obtaining our permission in writing.

**16. Statement of amount due.** When we ask you to do so, you must give us a written statement acknowledged before a notary public notifying us of the total amount of the indebtedness not yet paid and whether there is any reason you should not have to pay it.

**17. Correcting default under prior mortgage.** We can, but we will not have to, make any payment we consider necessary to correct any default under any prior mortgage. When we ask you to do so, you must reimburse us for the payment. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the payment as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement.

**18. Assignment of rents.** You assign to us all rental payments from any of the real estate. The assignment will become operative when, after we declare all amounts owing under the loan agreement immediately due, we make a written demand that the rental payments be paid to us.

**19. Foreclosure.** If after giving such notices of right to cure and of emergency mortgage assistance as are required by applicable law all amounts payable under the loan agreement but not yet paid become immediately due, whether because we declare them immediately due or in any other way, we can bring a lawsuit to foreclose our interest in the property by having it sold as provided by law. The property can be sold in 1 parcel or more

than 1 parcel. We will apply the money we receive from the sale (a) first to expenses we pay for advertising, arranging or conducting the sale (including attorney's fees as provided in Section 21) and (b) then to any of the indebtedness not yet paid in any order we choose. You must immediately pay us all of the indebtedness remaining unpaid after we apply money we receive from the sale.

**20. Receiver.** If you default, we will be entitled to have a receiver appointed by a court to manage the property. Without limiting any authority given the receiver by the court or applicable law, in managing the property, the receiver can (a) take possession of any of the property, (b) enter into, change or cancel any lease covering any of the property and (c) collect any rental payment from any of the property. The receiver will apply any money the receiver receives from managing the property (a) first to expenses we pay or the receiver pays as a result of having the receiver manage the property (including attorney's fees as provided in Section 22, any fee for the receiver and any premium for any bond for the receiver) and (b) then to any of the indebtedness not yet paid in any order we choose.

**21. Foreclosure and collection costs.** If we hire an attorney who is not a salaried employee of ours to bring a lawsuit to foreclose our interest in the property or collect in any other way any of the indebtedness not yet paid, you must, when we ask you to do so, pay us the attorney's fee, all court costs we pay for the lawsuit and all other expenses we pay in connection with the foreclosure, such as any fee for any examination, report or other evidence of title to any of the property.

**22. Other legal expenses.** If we hire an attorney who is not a salaried employee of ours to protect any of our rights in any of the property, whether because of any lawsuit brought by you or anyone else (such as a bankruptcy, probate or condemnation proceeding) or for any other reason, you must, when we ask you to do so, reimburse us for the attorney's fee and all other expenses we pay in connection with the lawsuit or defense whether we paid it before or after foreclosure. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the attorney's fees and other expenses as though the unreimbursed portion were an amount on which you had to pay a finance charge under the loan agreement whether we paid it before or after foreclosure.

**23. Other owner.** Anyone signing this mortgage as an other owner gives us the mortgage lien described in Section 2 and will be bound by all provisions of this mortgage, except that he or she will not have to pay any amount payable now or becoming payable in the future under the loan agreement.

**24. Notices.** Any notice we send you concerning this mortgage or any of the property will be sent to your current mailing address shown in our records concerning this mortgage. Except to the extent prohibited by applicable law, we can send it by regular mail. Any notice you send or deliver to us concerning this mortgage must be in writing and be sent or delivered to our address shown in Section 1 or any other address we specify, including without limitation any notice under 42

PA. C.S.A.    § 8143.

**25. Separate lien.** The mortgage lien you are giving us in this mortgage is and will remain separate from, and will not be merged into, the mortgage lien given in any prior mortgage or any other mortgage lien owner of this mortgage, we will have all rights given us by this mortgage and also all rights given to the owner of a mortgage by applicable law.

**26. Rights as owner of mortgage.** As the owner of this mortgage, we will have all rights given us by this mortgage and also all rights given to the owner of a mortgage by applicable law.

**27. Giving up of rights by you.** You give up any right to require that we (a) demand that you pay any of the indebtedness, (b) notify you if any of the indebtedness is not paid by the date it becomes due or (c) obtain a certificate stating that any of the indebtedness was not paid by the date it became due.

**28. No notice or loss of rights.** We can do any of the following without notifying you or losing any right against you, the property or any other property belonging to you now or acquired by you in the future: (a) accept any check or other order marked "paid in full" or with similar language as a payment of any of the indebtedness; (b) give additional time for the payment of any of the indebtedness, regardless of the number of times we previously did so and regardless of the length of any additional time we previously gave; (c) exercise, give up, fail t o e xercise o r d elay exercising any r ight against any person or property; or (d) fail to protect any interest in any property, whether by failing to file or record any document that must be filed or recorded in a public record or in any other way. For example, we can sue you under this mortgage whether or not we (a) sue anyone else, (b) bring a lawsuit to foreclose our interest in the property or (c) use any money that has been or is deposited with us by you or anyone else to pay any of the indebtedness not yet paid.

**29. Changes and giving up of rights by us.** No change in this mortgage can be made except in a writing signed by us. No right against you, the property or any other property belonging to you now or acquired by you in the future can be given up by us except in a writing signed by us.

**30. If 2 or more persons sign mortgage.** If 2 or more persons sign this mortgage, all of them will be, individually and together, liable under it, and, except to the extent required by applicable law, we can send or deliver any notice concerning it to any of them, and the notice will be effective for all of them.

**31. Conflicts.** If any part of this mortgage conflicts with applicable law, the law will control, and this mortgage will be considered c hanged to the extent n ecessary to comply with it.

**32. Continued effectiveness.** If any part of this mortgage is determined by a court to be invalid, the rest will remain in effect.

**33. Early release of mortgage.** This mortgage and the mortgage lien you are giving us in this mortgage will not end merely because the indebtedness is paid in full at any time during the period advances can be obtained under the loan agreement. They will end during that period only if we release t hem. We will release them during that period upon a request made by you as long as at the time we do so the indebtedness is paid in full.

**34. What law applies.** Any legal question concerning this mortgage will be decided in accordance with (a) Pennsylvania law without regard to the law of any other state and (b) to the extent applicable, federal law.

**35. Entire agreement.** This mortgage is the final and complete agreement between you and us concerning the mortgage lien you are giving us in this mortgage. Any statement concerning the mortgage lien made by any of our employees or anyone else is not part of this mortgage.

**36. Agreement and acknowledgment of receipt.** You agree to be legally bound by all provisions of this mortgage and acknowledge receipt of a completed copy of the loan agreement and of this mortgage.

_Signature of borrower 1  Kenneth P. Ray_      5/8/06   Date

_Signature of borrower 2  Tracy S. Ray_      5/8/06   Date

## SIGNATURE ACKNOWLEDGMENT

~~COMMONWEALTH OF PENNSYLVANIA~~ _STATE_ _MARYLAND_ )
                                                    ) ss:
**COUNTY OF WASHINGTON**                            )

On this, the _8th_ day of _May_, 2006, before me, a Notary Public, the undersigned officer, personally appeared Kenneth P. Ray, Tracy S. Ray known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Rona G. Mastiera_
Notary Public

[Notarial Seal]

My commission expires:
_12-01-2009_

I certify that the precise residence of the within named mortgagee, Manufacturers and Traders Trust Company, is One M&T Plaza, Buffalo, New York 14240.

Signature _Lisa D. Rosenberry_
Agent on behalf of mortgagee

**Schedule A to be attached prior to recording**

OPEN-END MORTGAGE
FROM

Kenneth P. Ray
Tracy S. Ray

TO

Manufacturers and Traders
Trust Company

Record and return to:
Manufacturers and Traders
Trust Company
One Fountain Plz – 4th floor
Buffalo, NY 14203
Attn: Documentation &
Collateral